**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

GRANDE VISTA, LLC and
PAUL LUTOV,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. TDC-20-0616

## MEMORANDUM OPINION

Plaintiffs Grande Vista, LLC and Paul Lutov have filed a civil action against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680 (2018), in which they allege trespass and nuisance arising from an incident in which a United States Air Force fighter jet jettisoned fuel tanks during a flight emergency that landed on their property. Pending before the Court is the Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Paul Lutov is the managing member of Grande Vista, LLC, a Maryland limited liability company that owns an 18.75-acre parcel of land located in Fort Washington, Maryland ("the Property"). That parcel is zoned R-R, a residential category that permits "single family detached housing on lots with a minimum size of 20,000 square feet" but also permits senior citizen housing projects upon approval of a special exception. Am. Compl. ¶ 22, ECF No. 17. Plaintiffs had planned to purchase an additional 6.25 acres of adjacent property, for a total of at least 25

contiguous acres. On this site, Plaintiffs hoped to build a senior assisted living facility, to be titled "Notley Vista," with multifamily dwelling units. *Id.* ¶ 21. In order to meet the requirements for the special exception needed to have this project approved, Plaintiffs planned for the development to be designated as a "medical/residential campus," which would require them to seek and obtain an "environmental entitlement." *Id.* ¶ 22-23, 36. To qualify for such an entitlement, the site would have to contain 25 or more acres of land.

On April 5, 2017, a United States Air Force pilot was flying an F-16 fighter jet in the area of the Property when the plane experienced a mechanical failure. The pilot jettisoned two fuel tanks, which "contained petroleum products" and chemical compounds "that pose substantial threats to human health." *Id.* ¶ 28. One tank "imploded upon the Plaintiffs' real property," and the other landed on a neighboring property. *Id.* ¶ 30. The impact created a crater, "destroying trees and vegetation," and "[j]et fuel seeped into the soil and groundwater causing contamination." *Id.* ¶ 31.

Prior to this 2017 incident, Plaintiffs had been seeking financing for the Notley Vista project and had been in the process of purchasing the additional 6.25 acres of land. According to Plaintiffs, the "environmental degradation" from the 2017 incident caused the financing agent to decline the project and rendered Plaintiffs "unable to procure the final acreage for the project." *Id.* ¶ 37. Plaintiffs allege that prior to the incident, the value of the full, approximately 25-acre property on which the Notley Vista development was to be built, assuming the environmental entitlement, was estimated at $10,740,000. Plaintiffs allege that the fair market value of their property after the 2017 incident was $3,858,700. In the Amended Complaint, Plaintiffs allege causes of action for trespass and nuisance and seek damages in the amount of $6,891,300, the difference between these two figures.

## DISCUSSION

In its Motion, the Government seeks dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction because Plaintiffs' claims may not be brought under the FTCA. Plaintiffs oppose the Motion.

### I. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to establish subject matter jurisdiction. The plaintiff has the burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999). When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

The FTCA grants jurisdiction to federal district courts over cases in which a plaintiff's claim is made (1) "against the United States," (2) "for money damages," (3) based on "injury or loss of property, or personal injury or death," (4) caused by the negligent act "of any employee of the Government," (5) acting within the scope of employment, and (6) "the United States, if a private person, would be liable" under the law of the place where the act occurred. 28 U.S.C. § 1346(b)(1); *see Kerns*, 585 F.3d at 194.

Under the FTCA, federal courts apply "the law of the place where the act or omission occurred." *See* 28 U.S.C. § 1346(b)(1); *Cibula v. United States*, 551 F.3d 316, 319 (4th Cir. 2009)

(quoting 28 U.S.C. § 1346(b)(1)). The parties agree that Maryland law applies to this FTCA action.

## II. Tortious Interference with Prospective Contract

Although the Amended Complaint specifically identifies the causes of action as trespass and nuisance, the Government argues that Plaintiffs' Amended Complaint instead should be construed to assert only a claim for tortious interference with a prospective contract because the Amended Complaint calculates damages, in part, based upon the lost value of the Notley Vista development that Plaintiffs had hoped to build. Where that development required Plaintiffs to acquire outside investment and then purchase other parcels of land, but the 2017 incident caused Plaintiffs not to be able to complete those steps, the Government asserts that Plaintiffs are effectively advancing a claim for tortious interference because the value of the development depended upon the completion of contracts for financing and the purchase of the other parcels. A claim for tortious interference with an existing or prospective contract is barred by the FTCA. *See* 28 U.S.C. § 2680(h) (barring FTCA liability for claims "arising out of" "interference with contract rights"); *Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir. 1991) (stating that the § 2680 exceptions should be interpreted "as a matter of federal, not state, law" using the "traditional and commonly understood definition of the tort" based on sources including "the Restatement (Second) of Torts and federal cases construing the exception" (citations omitted)); *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 (D.C. Cir. 1985) (holding that § 2680(h) prohibits FTCA suits for tortious interference with a prospective economic advantage); Restatement (Second) of Torts § 766B (Am. L. Inst. 1979) (defining the tort of intentional interference with prospective contractual relation). Such a claim, if brought in this case, would fail because it is prohibited by the FTCA, and because Plaintiffs have not alleged the Government

knew of the prospective contract, a required element of the tort. *See Brass Metal Products, Inc. v. E-J Enterprises, Inc.*, 984 A.2d 361, 383 (Md. Ct. Spec. App. 2009) (stating that "the defendant's knowledge of the contract" is an element of a contractual interference claim (quoting *Blondell v. Littlepage*, 968 A.2d 678, 696 (Md. Ct. Spec. App. 2009))); Restatement (Second) of Torts § 766B cmt. d (stating the intent requirement).

Though the Government correctly argues that Plaintiffs may not pursue a claim of tortious interference with a prospective contract, or any related claim of tortious interference, Plaintiffs have never stated, in their Amended Complaint or otherwise, that they are pursuing such a claim. Where, as discussed below, Plaintiffs have stated plausible claims of trespass and nuisance, the two claims they have actually asserted in the Amended Complaint, the Government's attempt to unilaterally reformulate Plaintiffs' claims in a way that would support dismissal of this case is unpersuasive and improper. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987) ("[T]he plaintiff is the master of the complaint."). The Court will not dismiss the Amended Complaint for having alleged an improper tortious interference claim that it does not actually assert.

## III. Trespass and Nuisance

To the extent that, in its Motion, the Government still seeks dismissal of the stated common law claims of trespass and nuisance, the Court considers whether Plaintiffs have stated plausible claims for relief. On an FTCA claim, the underlying cause of action is a tort claim derived from the applicable state law. *Kerns*, 585 F.3d at 194. Under Maryland law, a claim for trespass arises "[w]hen a defendant interferes with a plaintiff's interest in the exclusive possession of the land by entering or causing something to enter the land." *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 94 (Md. 2013) (quoting *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 189 (Md. 1994)). A trespass claim "requires that the defendant must have entered or caused something harmful or noxious to

enter onto the plaintiff's land." *Id.* Under a trespass claim, a plaintiff may seek damages for harm to the real property as measured by either (1) the permanent diminution in value, which is the difference between the fair market value of the property immediately before and after the trespass; or (2) the cost of restoration if the cost is not disproportionate to the diminution in value or if the plaintiff has proven a personal reason for restoring the property to its original condition. *See Regal Constr. Co. v. W. Lanham Hills Citizen's Ass'n*, 260 A.2d 82, 83-84 (Md. 1970); Md. Civil Pattern Jury Instructions 16:2 cmt. A (2020). A plaintiff also may recover additional, separate damages for the loss of enjoyment and the "usable value of his property and any consequential damages incurred" so long as the damages are not duplicative of those for restoration or diminution in value. *Albright*, 71 A.3d at 89, 90-91.

A claim for nuisance, meanwhile, is predicated on "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Wietzke v. Chesapeake Conf. Ass'n*, 26 A.3d 931, 943 (Md. 2011) (quoting *Rosenblatt*, 642 A.2d at 190). A nuisance claim requires that a plaintiff "establish an unreasonable and substantial interference with his or her use and enjoyment of his or her property, such that the injury is 'of such a character as to diminish materially the value of the property as a dwelling . . . and seriously interfere with the ordinary comfort and enjoyment of it.'" *Albright*, 71 A.3d at 94 (quoting *Wash. Suburban Sanitary Comm'n v. CAE-Link Corp.*, 622 A.2d 745, 759 (Md. 1993)). If the nuisance is temporary, a plaintiff may recover damages for the loss of use or enjoyment of the property; if the nuisance is permanent, a plaintiff may recover damages for the difference in "the fair market value of the property" before and after the injury, as well as the loss of use or enjoyment. *Hall v. Lovell Regency Homes Ltd. P'ship*, 708 A.2d 344, 355 (Md. Ct. Spec. App. 1998); Md. Civil Pattern Jury Instructions 20:5 cmt. A.

Diminution-in-value damages calculations for trespass and permanent nuisance are therefore the same: "Damages for diminution in value are determined by calculating the difference between the fair market value of the property immediately preceding the harm and the fair market value of the property immediately following the harm." *Albright*, 71 A.3d at 89-90. Fair market value is the "price as of the valuation date for the highest and best use of the property which a [seller], willing but not obligated to sell, would accept for the property, and which a purchaser, willing but not obligated to buy, would pay." *Id.* at 90 (quoting Md. Code Ann., Real Prop. § 12-105(b) (LexisNexis 2015)).

Here, there can be no dispute that Plaintiffs have properly alleged facts supporting claims of trespass and negligence. For trespass, Plaintiffs allege that the Government interfered with their exclusive interest in the Property by causing a jet fuel tank to enter upon it. Plaintiffs also allege that the incident created "a crater and destroy[ed] trees and vegetation," "causing permanent injury to the real property" that they owned. Am. Compl. ¶ 31. For nuisance, Plaintiffs allege that another fuel tank "landed on a neighboring property causing contamination" when "fuel seeped into the soil and groundwater." *Id.* ¶¶ 29-31. Both tanks contained fuel with "chemical compounds that pose substantial threats to human health," *id.* ¶ 29, and Plaintiffs allege "contamination of the natural resources on" their "real property," *id.* ¶ 53. These allegations are sufficient to support the claims. Indeed, the Government does not seek dismissal on the grounds that these allegations fail to state a claim.

Rather, the Government's position amounts to an argument that because Plaintiffs' allegations relating to specific amount of damages are not legally supportable, the otherwise properly pleaded trespass and nuisance claims must be dismissed. The Court agrees with the Government that Plaintiffs' allegations relating to the diminution of value of the Property appear

to be flawed in that they rely on a claim that the value of the Property before the 2017 incident was $10,740,000, a figure which, as reflected in an Economic Loss Report for the Grande Vista Project prepared by Joseph I. Rosenberg, CFA, LLC, an exhibit to the Amended Complaint, is an estimated value of the entire 26.85-acre parcel of land on which Plaintiffs planned to build the Notley Vista senior citizen housing project, which included Plaintiffs' Property, the 18.75-acre parcel of land, as well as the additional contiguous parcels land that Plaintiffs planned to purchase from other property owners for the project. This figure also assumes that, under local zoning ordinances, the assembled parcels of land received an "environmental entitlement" as a "medical/residential campus," which would be available only if the proposed site contained "at least 25 contiguous acres of land." *Id.* ¶¶ 34-36. Receiving this entitlement would require "approval of a special exception application." *Id.* ¶ 22.

Where the Amended Complaint acknowledges that as of the 2017 incident, Plaintiffs had not yet been able to "to procure the final acreage for the project," and thus that the special exception application had not yet been approved, *id.* ¶ 37, Plaintiffs' actual Property at the time of the 2017 incident contained only 18.75 acres, was not by itself eligible for an environmental entitlement, and was not yet a high-density senior housing facility. Under Maryland law, however, on a trespass or nuisance claim, "[d]iminution in value damages are appropriate where the injury is considered permanent because such damages compensate" "*the property owner* fully for the injury to *his or her land and improvements*." *Albright*, 71 A.3d at 89 (emphasis added). Similarly, fair market value reflects "the features of the individual property" and "any known defects or deleterious conditions in the property." *Id.* at 90. Here, the individual property at issue for purposes of calculating damages based on diminution of value is the individual 18.75-acre parcel actually owned by Plaintiffs at the time of the 2017 incident. A damages calculation based on the

fair market value of the larger, assembled parcel of land to be used for the entire Notley Vista project, after it had received the environmental entitlement not yet approved as of the date of the 2017 incident, would improperly compensate Plaintiffs for damage to over six acres of property they did not own, and would consider favorable zoning changes that they did not achieve. Plaintiffs' specific demand for damages thus appears to be legally flawed.

It does not follow, however, that the Amended Complaint must be dismissed. Plaintiffs would not be the first to have overshot the mark with a demand for damages. When viewed in the light most favorable to the nonmoving party, the Amended Complaint alleges facts supporting a plausible claim of damages in the form of diminution in the value of Plaintiffs' own property, a recognized theory of damages in a trespass or nuisance case. *See Albright*, 71 A.3d at 89-90. Before the 2017 incident, a Request for Financing prepared by Marcus & Millichap Capital Corporation, an exhibit to the Amended Complaint, calculated the estimated value of the 18.75-acre Property as $6,562,500, and Plaintiffs have alleged that the fair market value of the Property after the 2017 incident was $3,848,700, which would reflect a loss in value. Plaintiffs' allegations regarding the physical harm and contamination to their property support a reasonable inference that the difference between such figures is due to the 2017 incident. Plaintiffs have therefore plausibly alleged damages arising from their claims of trespass and nuisance. *See Albright*, 71 A.3d at 87 (recognizing the availability of diminution-in-value damages for claims stemming from well water contamination caused by an underground gas spill). The Motion will be denied as to the trespass and nuisance claims.

## IV. Pre-Judgment Interest and Injunctive Relief

Finally, the Government argues that the Court should dismiss Plaintiffs' requests for pre-judgment interest and injunctive relief. Although the Amended Complaint does not use these terms

in its demand for relief, it requests "applicable interest" on compensation for cleanup and removal costs and on other damages, Am. Compl. ¶¶ 49(b), 57(b), and seeks a judgment "compelling the Defendant to perform . . . any further assessment of any natural resource that has been, or may be, injured as a result of the destruction and discharge of hazardous substances and pollutants at the real property," *id.* ¶¶ 49(c), 57(c).

Under the FTCA, the United States "shall not be liable for interest prior to judgment." 28 U.S.C. § 2674; *see Scullari v. United States*, 205 F.3d 1324 (2d Cir. 2000) (unpublished table decision), 2000 WL 232786, at *3 (finding that the FTCA prohibits an award of pre-judgment interest on pecuniary damages). The FTCA also does not waive sovereign immunity for suits seeking injunctive relief. *Talbert*, 932 F.2d at 1065-66 (stating that under the FTCA, a court "lack[s] jurisdiction" to provide relief other than money damages); *Hendy v. Bello*, 555 F. App'x 224, 226 (4th Cir. 2014) (finding that the FTCA did not provide subject matter jurisdiction for a suit seeking injunctive relief). To the extent that the Amended Complaint seeks to compel the Government to pay pre-judgment interest or to conduct environmental remediation, Plaintiffs may not seek these remedies.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to Plaintiffs' requests for pre-judgment interest and injunctive relief and will be otherwise denied. A separate Order shall issue.

Date: April 22, 2021

THEODORE D. CHUANG
United States District Judge